ORIGINAL

Approved: ⎯⎯⎯⎯KA⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
KIERSTEN A. FLETCHER / BENET J. KEARNEY
Assistant United States Attorneys

Before: THE HONORABLE HENRY B. PITMAN
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA | **SEALED COMPLAINT** |
| - v. - | Violations of 18 U.S.C. §§ 1343 and 2 |
| MICHAEL PIZARRO, a/k/a "Eric Miller," | COUNTY OF OFFENSE: NEW YORK |
| Defendant. | |

19MAG 4431

- - - - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

CHRISTOPHER BASTOS, being duly sworn, deposes and says that he is a Detective with the New York City Police Department and a Task Force Officer with the Department of Homeland Security - Homeland Security Investigations, and charges as follows:

**COUNT ONE**
(Wire Fraud)

1. From in or about February 2017 through in or about April 2019, in the Southern District of New York and elsewhere, MICHAEL PIZARRO, a/k/a "Eric Miller," the defendant, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, PIZARRO, through phone calls made from New York, New York to Florida, Massachusetts, and elsewhere, made and caused to be made false representations to victims that the victims would receive government grant funds in exchange for an application and up-

front refundable application fee, whereas in truth and in fact the government grant did not exist and none of the victims were approved for such a grant.

(Title 18, United States Code, Sections 1343 and 2.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

2. I am a Detective with the New York City Police Department ("NYPD") and a Task Force Officer with the Department of Homeland Security – Homeland Security Investigations ("HSI"). My duties and responsibilities include the investigation of fraud offenses including wire fraud, bank fraud, and money laundering. The information contained in this affidavit is based upon my personal knowledge and my review of documents and records gathered during the course of this investigation, as well as information obtained, directly or indirectly, from other sources. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of the investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

3. Since 2016, the NYPD and HSI have been investigating a group of telemarketing companies (the "Telemarketing Companies") that operate a fraudulent scheme (the "Telemarketing Scheme"), by which they promise to earn victims money in exchange for the victim making an initial cash investment in business development, website design, grant applications, or tax preparation services. Instead, the victims receive only online pamphlets and so-called "coaching sessions," but do not earn any of the promised returns.

4. In connection with this investigation, I have interviewed several individuals who owned, operated, and/or worked at one or more of the Telemarketing Companies, including a cooperating witness ("CW-1") who has pleaded guilty to several federal offenses in connection with CW-1's participation in the Telemarketing Scheme and has agreed to provide information to the Government in hopes of receiving leniency at sentencing. Based on my interviews of CW-1, I have learned that MICHAEL PIZARRO, a/k/a "Eric Miller," the defendant, previously worked with CW-1 at one of the Telemarketing Companies. While employed by that Telemarketing Company, PIZARRO and other employees sold

2

so-called business development services to victims who had previously invested money to obtain a "grant." In connection with selling "grants," members of the Telemarketing Scheme represented to victims that the victims had qualified for a government grant, but before they could access it, they needed to either submit an application (which the Telemarking Company would prepare for them in exchange for a payment) or pay a sum of money towards the grant. In fact, the government grant did not exist.

5. I have also spoken to a second cooperating witness ("CW-2") who has pleaded guilty to several federal offenses in connection with CW-2's participation in the Telemarketing Scheme and has agreed to provide information to the Government in hopes of receiving leniency at sentencing. Based on my interviews of CW-2, I have learned that CW-2 previously worked with MICHAEL PIZARRO, a/k/a "Eric Miller," the defendant, at one of the Telemarketing Companies and that PIZARRO had at one point worked for a company called "National Grants."

6. During the course of this investigation, I have interviewed an individual ("Victim-1"). Based on my interview of Victim-1 and my review of documents provided to me by Victim-1, I have learned the following:

    a. In approximately February and March 2017, Victim-1 was contacted by several individuals who stated that they were representatives of "National Grants," including "Eric Miller," who represented that he was a "senior director" at "National Grants."

    b. At the time, Victim-1 resided in Tennessee and was approximately 78 years old.

    c. During the course of Victim-1's communications with representatives of "National Grants," "Eric Miller" made the following representations to Victim-1:

        i. Victim-1 was pre-approved for a $280,000 grant, which had been deposited in to a private escrow account at the "World Bank" in Washington, D.C.

        ii. In order to access the grant, Victim-1 would have to pay a 13.75% registration fee (or $38,500).

     iii. Subsequently, Victim-1's grant amount was increased to $725,000, but Victim-1 would have to pay an additional fee to access the grant.

     iv. "Miller" provided Victim-1 with two addresses for "National Grants," both of which were located in New York, New York.

   d. In approximately April 2017, Victim-1 received correspondence on "National Grants" letterhead, advising Victim-1 that he had been approved by the "Small Business development Association" for a $725,000 grant, conditioned on the payment of the "pre-funding registration fee" and providing a "potential grant payment date" of April 28, 2017. The signature block for the CEO of "National Grants" contains an address in New York, New York.

   e. Victim-1 ultimately sent $133,000 to a bank account provided to him by a representative of "National Grants," but never received any grant.

  7. Based on my involvement in this investigation, my conversations with other law enforcement officers, and my review of publicly available documents, I have learned, among other things, the following:

   a. In or about April 2018, MICHAEL PIZARRO, a/k/a "Eric Miller," the defendant, was charged in New York Supreme Court with (1) engaging in a scheme to defraud in the first degree, in violation of New York Penal Law § 190.65(1)(b) from October 15, 2015 through January 19, 2017, (2) criminal possession of stolen property in the fourth degree, in violation of New York Penal Law § 165.45(1) on or about December 29, 2016, both in connection with his involvement with National Grants (the "New York Charges").

   b. PIZARRO was arrested in connection with the New York Charges on or about April 17, 2018 and was remanded pending satisfaction of his bail conditions.

   c. On or about December 3, 2018, PIZARRO pleaded guilty to some or all of the New York Charges and was released on his own recognizance pending his sentencing.

  8. During the course of this investigation, I have interviewed a second individual ("Victim-2"). Based on my

4

interview of Victim-2 and my review of phone records, I have learned the following:

    a.    Victim-2 currently resides in Florida and is approximately 77 years old.

    b.    Between March 11, 2019 and March 13, 2019, Victim-2 received several telephone calls from a particular Telephone Number ("Telephone Number-1").

    c.    During the course of the phone calls, an individual who stated that his name was "Eric Miller" made the following representations to Victim-2:

        i.    "Miller" worked for a company called "National Grant," which was located in New York.

        ii.    Victim-2 was pre-approved for a $200,800 grant, by "World Bank" in Washington, D.C., but would have to pay a $24,500 refundable fee in order to get the grant.

        iii.    Victim-2 could not use a credit card to pay the refundable fee, but could borrow money from her credit card in order to pay the fee.

    d.    Victim-2 ultimately did not make any payments to "Miller" or "National Grant."

    9.    During the course of this investigation, I have interviewed an individual ("Victim-3") who received several telephone calls from Telephone Number-1. Based on my interview of Victim-1 and my review of phone records, I have learned the following:

    a.    Victim-3 currently resides in Massachusetts and is approximately 74 years old.

    b.    Between March 4, 2019 and March 16, 2019, Victim-3 received several telephone calls from Telephone Number-1.

    c.    During the course of the phone calls, an individual who stated that his name was "Eric Miller" made the following representations to Victim-3:

        i.    Victim-3 was pre-approved for approximately $300,000 in federal grants.

ii. Victim-3 would need to pay an up-front fee of $5,000 or $6,000 before she could access the grant.

d. "Miller" instructed Victim-3 to send money to an address in New York.

e. Victim-3 ultimately did not make any payments to "Miller."

10. On or about April 1, 2019, an undercover HSI agent ("UC-1") placed a telephone call to Telephone Number-1 and spoke to an individual who identified himself as "Eric." That call was recorded. I have separately played that recording for CW-1 and CW-2. Both CW-1 and CW-2 identified the voice of "Eric" on the recording as belonging to PIZARRO.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of MICHAEL PIZARRO, a/k/a "Eric Miller," the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

_____
Christopher Bastos
Detective, Task Force Officer
New York City Police Department/
Department of Homeland Security -
Homeland Security Investigations

Sworn to before me this
26th day of April, 2019

_____
THE HONORABLE HENRY B. PITMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

6